[NOT YET SCHEDULED FOR ORAL ARGUMENT]

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

HERITAGE FOUNDATION, et al.,

Appellants,

v.

UNITED STATES DEPARTMENT OF
JUSTICE,

Appellee,

Nos. 23-5168 & 23-5171

**OPPOSITION TO PLAINTIFFS-APPELLANTS' EMERGENCY
MOTION FOR INJUNCTION PENDING APPEAL**

BRIAN M. BOYNTON
*Principal Deputy Assistant
Attorney General*

SARAH CARROLL
GRAHAM W. WHITE
*Attorneys, Appellate Staff
Civil Division, Room 7230
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530
(202) 514-4052*

**TABLE OF CONTENTS**

Page

INTRODUCTION ......................................................................................1

STATEMENT ............................................................................................5

I.  Expedited Processing Under FOIA......................................................5

II.  Plaintiffs' FOIA Request ..................................................................6

III.  District Court Proceedings ..............................................................7

ARGUMENT...........................................................................................11

I.  Plaintiffs Have Not Demonstrated Irreparable Harm .........................12

II.  Plaintiffs Are Unlikely To Succeed On The Merits...............................19

III.  The Balance Of Equities And The Public Interest Weigh Against
Granting Preliminary Relief That Would Irreversibly Alter The
Status Quo.........................................................................................23

CONCLUSION .......................................................................................26

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases:**                                                                           **Page(s)**

*Al-Fayed v. CIA*, 254 F.3d 300 (D.C. Cir. 2001)......................................22

*In re Barr Labs., Inc.*, 930 F.2d 72 (D.C. Cir. 1991)............................... 4-5, 22, 25

*Changji Esquel Textile Co. Ltd. v. Raimondo*, 40 F.4th 716 (D.C. Cir. 2022) ......................................................................12

*Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290 (D.C. Cir. 2006) ......................................................................13

*Electronic Privacy Info. Ctr. v. Department of Justice*, 15 F. Supp. 3d 32 (D.D.C. 2014)......................................................................17

*Gordon v. Holder*, 632 F.3d 722 (D.C. Cir. 2011) ......................................18

*Heritage Found. v. EPA*, No. 23-748, 2023 WL 2954418 (D.D.C. Apr. 14, 2023)......................................................................14

*John Doe Co. v. CFPB*, 849 F.3d 1129 (D.C. Cir. 2017) ......................................11

*Judicial Watch v. DHS*, 895 F.3d 770 (D.C. Cir. 2018) ......................................21

*Linda R.S. v. Richard D.*, 410 U.S. 614 (1973) ......................................15

*Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094 (D.C. Cir. 2003) ......................................................................22

*National Ass'n of Criminal Defense Lawyers v. Department of Justice Executive Office for U.S. Attorneys*, 844 F.3d 246 (D.C. Cir. 2016)..............................15

*NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214 (1978) ......................................15

*NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132 (1975) ......................................3, 15

*National Wildlife Fed'n v. National Marine Fisheries Serv.*, 886 F.3d 803 (9th Cir. 2018)...................................................................................17

*Nken v. Holder*, 556 U.S. 418 (2009)...................................................................23

*Open Am. v. Watergate Special Prosecution Force*, 547 F.2d 605 (D.C. Cir. 1976) ........................................................................................25

*Payne Enters. v. United States*, 837 F.2d 486 (D.C. Cir. 1988).............................21

*Providence Journal Co. v. FBI*, 595 F.2d 889 (1st Cir. 1979) ................................23

*Pursuing Am.'s Greatness v. FEC*, 831 F.3d 500 (D.C. Cir. 2016) .......................23

*Sampson v. Murray*, 415 U.S. 61 (1974) .............................................................13

*Singh v. Berger*, 56 F.4th 88 (D.C. Cir. 2022) ...............................................11, 23

*Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008) .............................11

*Wisconsin Gas Co. v. FERC*, 758 F.2d 669 (D.C. Cir. 1985) ...............................12

**Statutes:**

Freedom of Information Act (FOIA):

5 U.S.C. § 552(a)(6)(E) ......................................................................................24

5 U.S.C. § 552(a)(6)(E)(i) ...............................................................................5, 24

5 U.S.C. § 552(a)(6)(E)(i)(I) ..............................................................................19

5 U.S.C. § 552(a)(6)(E)(iii) ............................................................2, 5, 9, 19, 20

5 U.S.C. § 552(a)(6)(E)(v)(I) ................................................................................5

5 U.S.C. § 552(b)(5) ..........................................................................................17

5 U.S.C. § 552(b)(7)(A) .....................................................................................17

5 U.S.C. § 552(b)(7)(D) ................................................................17

5 U.S.C. § 552(b)(7)(E) ................................................................17

**Regulations:**

28 C.F.R. § 16.5(a) .........................................................................5

28 C.F.R. § 16.5(e)(1)(iv) ...............................................................5

28 C.F.R. § 16.5(e)(4) .....................................................................6

**Other Authorities:**

H.R. Rep. No. 104-795 ..................................................................22

11 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* (3d ed.) ......................................................................................23

## INTRODUCTION

The Heritage Foundation and one of its officers filed a Freedom of Information Act (FOIA) request with the Department of Justice in March 2023, seeking certain records related to the investigation of Hunter Biden. The Executive Office of United States Attorneys (EOUSA), which handles requests for records maintained by U.S. Attorneys' Offices, granted their request for expedited processing. Plaintiffs' FOIA request has thus been prioritized over more than 2,000 other requests within EOUSA, except for 14 earlier-filed requests that had likewise been granted expedited treatment. The search for potentially responsive records is complete, and EOUSA is reviewing and processing the records so that any responsive, non-exempt information may be disclosed.

Plaintiffs filed this FOIA suit in June 2023, shortly after Hunter Biden was charged in a criminal information in the U.S. District Court for the District of Delaware. They then sought a preliminary injunction compelling nearly a full response to their FOIA request by July 21, 2023, in advance of a July 26 plea-agreement hearing in Mr. Biden's criminal proceeding.

The district court (Friedrich, J.) denied plaintiffs' motion for a preliminary injunction. The court explained that plaintiffs had not demonstrated irreparable harm, as public debate on the relevant matters will continue, if not intensify, after the plea hearing, and "have not established how their access to th[e] information would have any bearing on a judicial plea proceeding" to which they are not a party. Op. 5-6 (Dkt. No. 18) (Op.). The court further concluded that plaintiffs had not established a likelihood of success on their claim that FOIA required processing of their request by July 21. FOIA requires that agencies produce records "as soon as practicable" in response to expedited requests, 5 U.S.C. § 552(a)(6)(E)(iii), and plaintiffs offered "virtually no supporting evidence" to suggest that "the 'as soon as practicable' standard demand[ed] production on or before July 21." Op. 8-9. The district court also found that the balance of equities and the public interest disfavored relief, particularly as plaintiffs' requested injunction would require EOUSA to prioritize their request over earlier-filed expedited requests. Op. 9-10. Those requests address, among other things, sensitive matters including the January 6 Capitol riots, the search on Mar-a-Lago, and a capital habeas case. Op. 10. "The inevitable delay in processing those requests that

2

would result from entering a preliminary injunction here further tilts the scale in DOJ's favor." Op. 10.

Plaintiffs have now moved this Court for an injunction pending appeal requiring the Department of Justice to respond to a different subset of their FOIA request on a different timeline than the one they requested in their preliminary-injunction motion—by Monday, July 24.

Plaintiffs cannot satisfy any of the requirements for an injunction. Their claimed "informational injury" from a lack of immediate access to records related to Hunter Biden's prosecution does not entitle them to extraordinary relief in this FOIA suit. After all, "all FOIA requesters prefer to receive responsive records sooner rather than later," Op. 4, and plaintiffs cannot establish that the records will lose significant value if they are produced after July 24 (or July 21, or whatever new date plaintiffs might choose). Plaintiffs' desire to use the documents in Hunter Biden's criminal proceeding (to which they are not even a party) does not justify relief: FOIA "is fundamentally designed to inform the *public* about agency action and not to benefit private litigants" in separate litigation. *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 143 n.10 (1975) (emphasis added).

Plaintiffs also cannot show a likelihood of success on their claim that the Department's obligation to process expedited FOIA requests "as soon as practicable" entitles them to production on the extraordinarily compressed schedule they demand. When it granted expedited processing, EOUSA placed plaintiffs' request ahead of more than 99.3 percent of the FOIA requests pending before it. But the request cannot be processed instantly, given the number of potentially responsive records, the need to identify and redact exempt information and consult with other Department components whose equities are implicated, and the existence of 14 other expedited requests that were filed before plaintiffs'. And plaintiffs' requested injunction would turn FOIA on its head, precluding the Department of Justice, the district court, and this Court from engaging in the careful consideration of exemptions that is at the heart of a FOIA suit. *See* Op. 5 n.7.

Plaintiffs also cannot show that the public interest or the balance of equities favor a preliminary injunction that would overturn the status quo, depart from the FOIA scheme that Congress devised, and "put[] [plaintiffs] at the head of the queue" at the expense of non-parties who have equally valid interests in the expedited processing of their FOIA requests, *In re Barr*

4

*Labs., Inc.*, 930 F.2d 72, 75 (D.C. Cir. 1991).  The Court should deny

plaintiffs' motion for an injunction pending appeal.

**STATEMENT**

## I.     Expedited Processing Under FOIA

FOIA requires agencies to issue regulations "providing for expedited

processing of requests for records" where the requester demonstrates a

"compelling need."  5 U.S.C. § 552(a)(6)(E)(i).  A requester has a

"compelling need" if, *inter alia*, "a failure to obtain requested records on an

expedited basis . . . could reasonably be expected to pose an imminent

threat to the life or physical safety of an individual," *id.* § 552(a)(6)(E)(v)(I),

or if the request pertains to "a matter of widespread and exceptional media

interest in which there exist possible questions about the government's

integrity that affect public confidence," 28 C.F.R. § 16.5(e)(1)(iv).

Once the agency "has granted expedited processing," it shall process

the request "as soon as practicable."  5 U.S.C. § 552(a)(6)(E)(iii).  FOIA does

not define "as soon as practicable," *id.*, but Department of Justice FOIA

regulations provide that the agency "ordinarily will respond to requests

according to their order of receipt."  28 C.F.R. § 16.5(a).  "If expedited

processing is granted, the request shall be given priority, placed in the

processing track for expedited requests, and shall be processed as soon as practicable." *Id.* § 16.5(e)(4).

## II.     Plaintiffs' FOIA Request

Plaintiffs filed a FOIA request on March 10, 2023 seeking the following records:

1.  All documents and communications sent or received by David Weiss or any employee of the U.S. Attorney's Office for the District of Delaware referring or relating to Special Counsel status for the investigation concerning Hunter Biden; and

2.  All documents and communications between or among employees of the U.S. Attorney's Office for the District of Delaware and employees of any other U.S. Attorney's Office with venue to bring charges against Hunter Biden or his associates in that jurisdiction.

Decl. of Kara Cain ¶ 8 (Dkt. No. 10-1) (Cain Decl.).  The request mirrors a congressional oversight request to the Department of Justice.  Compl. ¶¶ 34, 36 (Dkt. No. 1).  The Department directed the request to EOUSA, which processes requests for records maintained by U.S. Attorneys' Offices.  Cain Decl. ¶¶ 4, 9.

EOUSA granted expedited processing on March 22, placing plaintiffs' request ahead of more than 2,000 non-expedited requests.  Cain Decl. ¶¶ 11, 21.  The next day, it tasked the U.S. Attorney's Office for the District of Delaware with searching for records responsive to plaintiffs' request.  *Id.*

6

¶ 14.  Those searches yielded 2,523 pages of potentially responsive records, which EOUSA has begun to review.  *Id.* ¶¶ 15, 16.  Because "the request seeks communications between the District of Delaware and other components of DOJ, including other USAOs," EOUSA will be "required to forward those records to the component(s) for consultation."  *Id.* ¶ 18.  That will necessarily "slow the processing of Plaintiffs' request."  *Id.*

EOUSA is simultaneously processing 14 other expedited requests that it received before plaintiffs' request.  Cain Decl. ¶ 20.  The other expedited requests "deal with sensitive matters such as the January 6th Capitol riots, the search on Mar-A-Lago, classified records and communications related to the Special Counsel's Office, and criminal case files for a Capital Habeas case."  *Id.* ¶ 23.

## III.  District Court Proceedings

Plaintiffs brought this action seeking to compel a response to their FOIA request on June 26, 2023.  On June 29, plaintiffs moved for a preliminary injunction requiring the Department to process and produce a "subset" of responsive records by July 21.  *See* Pls.' Mot. for Preliminary Inj.

7

1 (Dkt. No. 6).[1] Plaintiffs claimed that the Department had violated FOIA's requirement to process their expedited request "as soon as practicable," and that they would suffer irreparable harm if they failed to receive the records for use "(1) in relation to Robert Hunter Biden's plea hearing set for July 26, 2023; and (2) in on-going Congressional oversight and possible impeachment proceedings." *Id.* at 2.

The district court denied the motion on July 19. It held that plaintiffs failed to show irreparable harm because the records would remain useful if received after the July 26 plea hearing. Op. 4-5. The court explained that plaintiffs "have provided no reason to think that the court in Hunter Biden's case is incapable of deciding for itself whether it has sufficient information to determine whether to accept the plea or whether it must demand more." *Id.* at 6. It also held that plaintiffs' claim of irreparable harm was belied by the substantial likelihood that the requested records would be "exempt in whole or significant part" under FOIA Exemptions 5 and 7(A). *Id.* at 6-7.

---

[1] The district court noted that plaintiffs "narrowed" their request "only modestly" for purposes of the preliminary-injunction motion. Op. 3. Before this Court, plaintiffs seek to accelerate release of a different subset of records responsive to their original request. *See* Mot. 1.

The district court further held that plaintiffs were unlikely to succeed on the merits. The parties agreed "that the relevant merits question is whether DOJ is *actually* processing the request as soon as practicable," and the court saw "virtually no . . . evidence" to support plaintiffs' claim that this "standard demand[ed] production on or before July 21." Op. 8-9 (internal quotation marks omitted). The district court found that several factors contributed to potential delays in processing the request, including the requirement that EOUSA consult with other interested Department components, "the agency's need to determine withholding and redactions for a high volume of potential exemptions," and the agency's need to process earlier-filed expedited requests. *Id.* at 8. Rather than accept plaintiffs' artificially accelerated production schedule, the court made clear that it would "determine[]" the proper schedule "in the near future, after DOJ answers the complaint." *Id.* It also rejected plaintiffs' argument that FOIA required EOUSA to prioritize their request over other expedited requests, reasoning that "an agency faces the same obligation for '*any*' expedited request: namely, to process it 'as soon as practicable.'" *Id.* at 9 (quoting 5 U.S.C. § 552(a)(6)(E)(iii)).

The district court then found that the balance of the equities and the public interest militated against preliminary injunctive relief. The court explained that plaintiffs' proposed injunction would require EOUSA to move their request ahead of other requests that had likewise been granted expedition, "all without the benefit of hearing from the nonparty requestors whose productions would be delayed." Op. 9-10. As the court noted, other expedited requests likewise deal with sensitive subjects, and "[t]he inevitable delay in processing those requests that would result from entering a preliminary injunction here further tilts the scale in DOJ's favor." Op. 10. Plaintiffs appealed.

On July 20, plaintiffs moved in the district court for an injunction pending appeal, seeking an order compelling production of a new subset of records within the scope of their FOIA request by a new date, Monday, July 24, 2023. Pls.' Mot. for Inj. Pending Appeal 1 (Dkt. 21). The district court denied the motion in a minute order later that day, explaining that plaintiffs improperly requested new relief—i.e., "to order DOJ to produce the relevant documents by a newly proposed, later date." *See* Minute Order. The court further held that "even if the Court were to consider the plaintiffs' arguments on the merits, treating them as in support of a

different proposed preliminary injunction, the Court would deny the motion for the same reasons stated in" its previous order. *Id.* Plaintiffs filed a second notice of appeal "in so far as" the court's order "treated Plaintiffs' Motion for an Injunction Pending Appeal . . . as a renewed Motion for a Preliminary Injunction and denied the same." Notice of Interlocutory Appeal 1 (Dkt. No. 22).

## ARGUMENT

An injunction pending appeal is an "exceptional remedy" that requires an exceptional showing. *John Doe Co. v. CFPB*, 849 F.3d 1129, 1131 (D.C. Cir. 2017). A motion for irreversible relief that would depart from the status quo is particularly extraordinary. *See Singh v. Berger*, 56 F.4th 88, 95 (D.C. Cir. 2022) ("[C]ourts are institutionally wary of granting relief that disrupts, rather than preserves, the status quo, especially when that relief cannot be undone if the non-movant ultimately wins on the merits."). To obtain an injunction pending appeal, the movant "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of an injunction, that the balance of equities tips in his favor, and that an injunction is in the public interest." *John Doe*, 849 F.3d at 1131 (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).

11

Although plaintiffs suggest that they need only show "a substantial case on the merits," Mot. 12 (quotation marks omitted), this Court has questioned whether that "sliding-scale" approach remains valid. *See, e.g.*, *Changji Esquel Textile Co. Ltd. v. Raimondo*, 40 F.4th 716, 726 (D.C. Cir. 2022). In any event, plaintiffs cannot satisfy the requirements for an injunction pending appeal under any potentially applicable standard.[2]

## I.    Plaintiffs Have Not Demonstrated Irreparable Harm

To obtain an injunction pending appeal, plaintiffs must identify an irreparable harm that is "both certain and great," "actual . . . not theoretical," and "of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm." *Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (cleaned up). "[T]he basis of injunctive relief in the federal courts has always been irreparable harm,"

---

[2] As the district court noted, the "injunction pending appeal" that plaintiffs seek is also fundamentally improper. They are appealing the denial of their motion for a preliminary injunction seeking production of records by July 21, 2023. They "are not," however, "asking for an injunction pending appeal to preserve the possibility of that relief." 7/20/23 Minute Order. "They are instead requesting new relief—to order DOJ to produce the relevant documents by a newly proposed, later date—that is not properly presented in a motion for injunction pending appeal." *Id.* They also now seek a different "subset" of requested records. *See supra* n.1.

and plaintiffs can be denied a preliminary injunction based on their inability to make that showing alone. *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006) (quoting *Sampson v. Murray*, 415 U.S. 61, 88 (1974)).

**A.** Plaintiffs have failed to show that they will suffer irreparable harm if their FOIA request is not processed by July 24. EOUSA has been working assiduously to process the request on an expedited basis. The search for responsive records has already been completed, and EOUSA is processing the results. Cain Decl. ¶¶ 14-20. By granting plaintiffs' request for expedited processing, EOUSA has prioritized the request "ahead of more than 2,000 non-expedited requests." *Id.* ¶ 21. The district court, moreover, has indicated that it will set a production schedule "in the near future, after DOJ answers the complaint." Op. 8. That attention from the Department of Justice and the district court ensures that plaintiffs will receive any responsive, non-exempt information as quickly as practicable.

Plaintiffs assert that they will suffer an "*informational* injury" if they are denied access to documents by the extraordinarily accelerated date they have set. Mot. 18. But every FOIA requester—including the 14 requesters who were granted expedited processing before plaintiffs—has an

13

informational interest in the records he or she seeks.  Indeed, "all FOIA

requesters prefer to receive responsive records sooner rather than later."

Op. 4.  In the rare FOIA cases where district courts have granted

preliminary relief, the plaintiffs showed that the documents at issue were

"time-sensitive and highly probative, or even essential to the integrity, of

an imminent event, after which event the utility of the records would be

lessened or lost."  *Heritage Found. v. EPA*, No. 23-748, 2023 WL 2954418, at

*4 (D.D.C. Apr. 14, 2023) (quotation marks omitted).  Here, by contrast, as

the district court explained, "[t]he public debate inside and outside of

Congress over Hunter Biden's actions, his criminal prosecution, and any

involvement therein by the President of the United States will not end on

July 26, 2023."  Op. 5.  There is no reason that the records at issue will lose

their relevance in a matter of days; "[i]ndeed, the issue may become even

more salient" as investigations continue in the months ahead.  *Id.*

Plaintiffs assert that they need the records before Hunter Biden's plea

hearing, Mot. 17, but they "have not established how their access to this

information would have any bearing on [that] proceeding," Op. 6.

"[P]laintiffs are not party to Hunter Biden's criminal case," and whether

the Delaware district court "should accept Hunter Biden's guilty plea is not

14

a political question subject to public debate that could be sparked by the production of documents under FOIA; it is a legal question for the presiding judge to determine under Rule 11 of the Federal Rules of Criminal Procedure." *Id.*; *cf. Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another.").

Plaintiffs also assert that they will "use the information they seek in Court in Delaware." Mot. 17. Although they do not explain this assertion, they cite pages of a district-court reply in which they mentioned a contemplated "*amicus* filing in Delaware Court." Pls.' Reply in Support of their Mot. for a Preliminary Injunction 14 (Dkt. No. 15-1). But a professed need for documents for use in another civil or criminal proceeding cannot support a preliminary injunction or other special treatment under FOIA, because FOIA "is fundamentally designed to inform the *public* about agency action and not to benefit private litigants." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 143 n.10 (1975) (emphasis added); *see also NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978) ("FOIA was *not* intended to function as a private discovery tool . . . ."). In any event, plaintiffs do not explain why the records must be produced prior to such a filing, nor

have they provided any "reason to think that the court in Hunter Biden's case is incapable of deciding for itself whether it has sufficient information to determine whether to accept the plea or whether it must demand more." Op. 6.

Plaintiffs' argument that they need the requested records prior to July 24 for use in "ongoing Congressional proceedings" is equally untenable. *See* Mot. 21. As the district court observed, congressional proceedings "will not end on" the date of Hunter Biden's plea hearing, and the documents plaintiffs seek (which the House Judiciary Committee has likewise requested in its oversight capacity) will not "lose their utility in these congressional proceedings and their accompanying debates" if plaintiffs obtain them after July 24. Op. 5 & n.3. Indeed, while plaintiffs assert that congressional investigations "are fast moving and are composed of a number of key dates," Mot. 22, they do not suggest that the investigations and accompanying public discourse will end soon, and they have not identified any upcoming dates in the proceedings that require their request to be processed by July 24.

**B.** The district court also correctly found that plaintiffs cannot show irreparable harm given that the records on which they premise their

"informational injury," Mot. 21, are highly likely to be exempt from disclosure in whole or significant part, Op. 6-7; *see National Wildlife Fed'n v. National Marine Fisheries Serv.*, 886 F.3d 803, 819 (9th Cir. 2018) (requiring a showing that "the requested injunction would forestall the irreparable harm"); *Electronic Privacy Info. Ctr. v. Department of Justice*, 15 F. Supp. 3d 32, 46 (D.D.C. 2014) (Jackson, J.) (explaining that a plaintiff "cannot claim to be injured—much less 'irreparably' so—if the [government] withholds documents that [the plaintiff] is not entitled to access in the first instance").

By its nature, plaintiffs' request for records related to the Hunter Biden prosecution seeks internal communications among Department lawyers about legal questions and prosecutorial strategy. The Department will produce any responsive, non-exempt information consistent with the statute, but given the request's nature, it is likely that much responsive information is exempt from disclosure under FOIA Exemption 5 and/or 7(A), and potentially Exemptions 7(D) and 7(E). *See* Cain Decl. ¶ 19; 5 U.S.C. § 552(b)(5), (7)(A), 7(D), 7(E).

Plaintiffs' unadorned claim that the records they seek "do not implicate Exemptions 5 and 7(A)" because they "are decisions as to prosecutorial authority," Mot. 24, cannot withstand scrutiny. Decisions

about "prosecutorial authority" reflect core exercises of Executive discretion protected by the attorney-client, work-product, deliberative-process, and law-enforcement privileges. *Cf., e.g.*, *National Ass'n of Criminal Defense Lawyers v. Department of Justice Executive Office for U.S. Attorneys*, 844 F.3d 246, 250-52 (D.C. Cir. 2016) (describing the broad work-product privilege applicable to many federal prosecutorial materials). Accordingly, as the district court explained, it appears at least preliminarily "that the documents most likely to vindicate the plaintiffs' asserted interests justifying injunctive relief are those that are also most likely to be exempt from disclosure under FOIA." Op. 7.

**C.** Plaintiffs' delay in seeking a preliminary injunction also militates against a finding of irreparable harm, particularly one that could plausibly justify the extraordinarily compressed FOIA production schedule that they seek. *See, e.g.*, *Gordon v. Holder*, 632 F.3d 722, 725 (D.C. Cir. 2011) (explaining that delay "may support a conclusion that the plaintiff cannot satisfy the irreparable harm prong"). Plaintiffs waited months to sue, a delay that is difficult to square with their claim they will suffer irreparable harm if they cannot now obtain the requested records for immediate use.

## II.    Plaintiffs Are Unlikely To Succeed On The Merits

The district court also correctly concluded that plaintiffs are unlikely to succeed on the merits of their claims that the Department has not processed their FOIA request quickly enough.  FOIA requires agencies to promulgate regulations providing for expedited processing where a requestor demonstrates "compelling need."  5 U.S.C. § 552(a)(6)(E)(i)(I).  Once the agency "has granted expedited processing," it shall process the request "as soon as practicable."  *Id.* § 552(a)(6)(E)(iii).  The Department granted plaintiffs' request for expedited processing, placing their FOIA request ahead of more than 2,000 non-expedited requests.  Cain Decl. ¶ 21.  And the Department is processing the request as quickly as it practicably can, taking into account "the volume of potentially responsive records and EOUSA's other demands—including the 14 expedited requests that were received before Plaintiffs'."  Cain Decl. ¶ 20; *see also id.* ¶ 18 (describing the need to consult with other interested components of the Department before producing records).  As the district court observed, all of this "cast[s] substantial doubt on the plaintiffs' claim—for which they marshal virtually no supporting evidence—that the 'as soon as practicable' standard

19

demands production on" the extraordinarily compressed timeline they have requested.  Op. 8-9.

Plaintiffs do not dispute that EOUSA has given priority to expedited requests and is processing them in the order they were received.  Instead, they argue that FOIA requires EOUSA to move their request ahead of all other expedited requests given the imminent plea hearing in Hunter Biden's criminal case.  Mot. 13-16.  As an initial matter, the other 14 expedited requests likewise concern important current events, including "the January 6th Capitol riots, the search on Mar-A-Lago, classified records and communications related to the Special Counsel's Office, and . . . a Capital Habeas case."  Cain Decl. ¶ 23.  And as the district court explained, "all the statute requires is that, once a request is expedited, the agency process it as soon as practicable."  Op. 9; *see* 5 U.S.C. § 552(a)(6)(E)(iii).  By the plain statutory text, the Department "faces th[at] same obligation for '*any*' expedited request," Op. 9, including the expedited requests that were already pending when plaintiffs submitted theirs.

Plaintiffs err in suggesting that EOUSA's processing of expedited requests in the order they were received would "effectively neutralize any right to expedition."  Mot. 15.  By granting expedited processing to

plaintiffs' request, EOUSA has moved it ahead of more than 99.3% of the requests in the queue. There can be no serious doubt that EOUSA has prioritized its response to plaintiffs' FOIA request, and the statute requires nothing more. To grant relief "would mean effectively granting the plaintiffs' request extra-expedited status," Op. 9, beyond what FOIA requires.

The authorities cited by plaintiffs do not say otherwise. *See* Mot. 13-15 (citing *Judicial Watch v. DHS*, 895 F.3d 770 (D.C. Cir. 2018); *Payne Enters. v. United States*, 837 F.2d 486 (D.C. Cir. 1988)). *Judicial Watch* and *Payne* did not address FOIA's "as soon as practicable" standard for expedited requests and instead concerned patterns of prolonged "unexplained" or "unjustified" delays by agencies. *Judicial Watch*, 895 F.3d at 776 (agency acknowledged initial receipt of plaintiff's requests but "took no further action" for more than a year); *Payne*, 895 F.3d at 778 (agency refused to produce requested records for two years); *see also* Op. 4-5 & n.3 (distinguishing district court cases). By contrast to *Judicial Watch* and *Payne*, there is no dispute that EOUSA promptly began searching for responsive records and has already begun processing the records it found. Cain Decl. ¶¶ 14-16. And there is no "unexplained" or "unjustified" delay

21

in this case. As the district court noted, EOUSA explained why it would not be practicable to process plaintiffs' FOIA request by July 21 as they requested in their preliminary-injunction motion. Op. 8.

Plaintiffs suggest that the Department of Justice could "*cho[ose]* to bring" more resources "to bear" to comply with their extraordinary request for relief. Mot. 16. This Court and Congress, however, have acknowledged "the finite resources generally available for fulfilling FOIA requests." *Al-Fayed v. CIA*, 254 F.3d 300, 310 (D.C. Cir. 2001) (quoting H.R. Rep. No. 104-795). A surge of resources to satisfy plaintiffs' arbitrary deadlines would necessarily divert resources from other aspects of the Department's mission. Plaintiffs' unwillingness to wait their turn is no reason to grant them relief beyond what FOIA affords and no reason to disadvantage other requesters granted expedited processing or detract from other aspects of the Department's work. *Cf. Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1101 (D.C. Cir. 2003) (noting "the importance of there being 'competing priorities' for limited resources" and approving an agency's "'first-come' procedure" for processing petitions) (quoting *In re Barr Labs., Inc.*, 930 F.2d 72, 75 (D.C. Cir. 1991)).

**III.    The Balance Of Equities And The Public Interest Weigh Against Granting Preliminary Relief That Would Irreversibly Alter The Status Quo**

The balance of equities and the public interest, which "merge" where relief is sought against the federal government, *Nken v. Holder*, 556 U.S. 418, 435 (2009); *Pursuing Am.'s Greatness v. FEC*, 831 F.3d 500, 511 (D.C. Cir. 2016), strongly counsel against the extraordinary relief plaintiffs seek.  That is particularly true because plaintiffs seek to disrupt the status quo and obtain, through a purportedly interim remedy, a large portion of the final relief they seek in this case.  In evaluating the public interest, this Court has considered "the nature of [a] requested injunction as one that will change the status quo . . . and . . . grant potentially dispositive relief on a central claim."  *Singh*, 56 F.4th at 108; *see also* 11 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2904 (3d ed.) (the purpose of an injunction pending appeal is "to preserve the status quo and to ensure the effectiveness of the eventual judgment").  Plaintiffs' requested injunction, by contrast to a genuine interim remedy, would grant them dispositive and irreversible relief on much of their claim.  *See Providence Journal Co. v. FBI*, 595 F.2d 889, 890 (1st Cir. 1979) (noting in a FOIA case that "[o]nce the documents are surrendered. . . , confidentiality will be lost for all time").

23

The relief plaintiffs seek is also inconsistent with the statutory scheme that Congress devised. Congress specified that, in a case where expedition is warranted, the agency must produce records "as soon as practicable." 5 U.S.C. § 552(a)(6)(E). That standard leaves room for "practica[l]" considerations, including available resources, the volume of a given request, and how many expedited requests were received earlier. *See id.* § 552(a)(6)(E)(i) (directing agencies to establish rules and regulations for processing expedited requests). EOUSA has explained how these factors bear on its expedited processing of plaintiffs' request. *See* Cain Decl. ¶¶ 18-20. And plaintiffs' requested relief would further distort the statutory scheme because, as the district court noted, the extraordinarily expedited schedule they request would leave virtually no time for the court to "resolve any dispute over [potentially applicable] exemptions before a final production." Op. 7 n.5. Plaintiffs cannot end-run the scheme Congress devised for processing and adjudicating FOIA requests simply because they wish to "make use of" records in a criminal proceeding to which they are not a party. Mot. 1.

Plaintiffs' requested injunction would also injure third parties by "effectively granting the plaintiffs' request extra-expedited status, jumping

24

the line ahead of" earlier-filed "requests deemed similarly time-sensitive under FOIA's expedition standards." Op. 9. As noted, those requests, like plaintiffs', pertain to topics of intense public interest, including the January 6 Capitol riots, the search of Mar-a-Lago, and records and communications related to the Special Counsel's office. Cain Decl. ¶ 23. An order "putting [plaintiffs] at the head of the queue [would] simply move[] all others back one space," *Barr Labs.*, 930 F.2d at 75, an inequitable result to inflict on "nonparty requesters" with equally valid interests in obtaining information on an expedited basis, Op. 10; *see also Open Am. v. Watergate Special Prosecution Force*, 547 F.2d 605, 614 (D.C. Cir. 1976) ("The real parties at interest here may not be the [government entities from which production was sought], but the 5,137 other persons or organizations who made requests prior to plaintiff . . . ."). Plaintiffs' desire to obtain documents before a particular hearing in a criminal case in which they play no role does not come close to justifying such a "reallocation of resources." *Open Am.*, 547 F.2d at 614.

**CONCLUSION**

For the foregoing reasons, the Court should deny plaintiffs' motion for an injunction pending appeal.

Respectfully submitted,


BRIAN M. BOYNTON
  *Principal Deputy Assistant*
    *Attorney General*

SARAH CARROLL

 s/ *Graham W. White*
GRAHAM W. WHITE
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7230*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-4052*


JULY 2023

# CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing response complies with the requirements of Federal Rule of Appellate Procedure 27(d) because it has been prepared in 14-point Book Antiqua, a proportionally spaced font. I further certify that this response complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2) because it contains 5,109 words according to the count of Microsoft Word.

s/ *Graham W. White*
GRAHAM W. WHITE

**CERTIFICATE OF SERVICE**

I hereby certify that on July 23, 2023, I electronically filed the foregoing with the Clerk of the Court by using the appellate CM/ECF system.

s/ *Graham W. White*
GRAHAM W. WHITE